| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   3:09-CR-131-TAV-DCP |
| ) | |
| CARL F. CAUDILL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for compassionate release filed on defendant's behalf by counsel [Doc. 44]. The United States has filed a response [Doc. 47], defendant has filed a reply [Doc. 48], as well several notices of supplemental authority [Docs. 49-53]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motion will be **DENIED**.

**I.    Background**

On April 20, 2010, defendant pleaded guilty to two counts of using, carrying, and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) [Docs. 18, 19]. Defendant received a sentence of 384 months' imprisonment, followed by three (3) years of supervised release [Doc. 22]. Defendant's sentence was later reduced to 324 months, followed by three (3) years of supervised release [Doc. 33].

Defendant is housed at USP Yazhoo City, which currently has three (3) active cases of COVID-19 amongst the inmates, seven (7) active cases amongst the staff, and 310 staff

and 855 inmates have been vaccinated against COVID-19. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 14, 2021). Defendant is forty-one (41) years old and is scheduled for release on April 4, 2032. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 14, 2021). As a basis for compassionate release, defendant argues that the change in law regarding 18 U.S.C. § 924(c) "stacking"[1] qualifies as extraordinary and compelling circumstances.

## II.     Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all

---

[1] Before the First Step Act, a defendant's first § 924(c) conviction carried a mandatory-minimum sentence of five years' incarceration, and each additional § 924(c) conviction carried a sentence of twenty-five years' incarceration, even if the defendant's § 924(c) convictions were part of the same indictment. 18 U.S.C. § 924(c) (2015). Under the First Step Act's new framework, only a defendant who has a prior final § 924(c) conviction is subject to the escalating mandatory-minimum sentences for a subsequent § 924(c) conviction. First Step Act, § 403(a) (codified at 18 U.S.C. 924(c)(1)(C)). The changes do not apply to defendants who had already been sentenced prior to the First Step Act's passage. First Step Act, § 403(b) (codified at 18 U.S.C. § 924 notes).

2

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 44].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

3

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III. Analysis

#### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The United States concedes that the exhaustion requirement has been met [Doc. 47]. Thus, the Court may consider the merits of defendant's request.

4

### B. Extraordinary and Compelling Reasons

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 at 519. In this instance, though not required, the Court will address both the extraordinary and compelling reasons requirement and the §3553(a) factors.

Defendant argues that the First Step Act's change to § 924(c) "stacking" satisfies the extraordinary and compelling requirement for compassionate release. Specifically, defendant points to the fact that he was originally charged with, among other charges, four (4) counts of violating section 924(c) [*See* Doc. 1 at Counts 2, 5, 8, and 18]. Defendant argues he was thus faced with the choice of preceding to trial and risking a potential mandatory minimum (because of "stacking") of 82 years if convicted of all of the 924(c) charges, or pleading guilty to two of the 924(c) charges and facing only a 32 year mandatory minimum [Doc. 45 at p. 6].[2] Defendant contends that if he were sentenced now, subject to the changes effected by the First Step Act, on the two counts which he pleaded guilty to, he would face a mandatory minimum of only 14 years [*Id*. at p. 19].[3]

The Court notes that the Sixth Circuit has not conclusively addressed whether it is appropriate to use the mechanism of compassionate release to apply the "stacking" changes

---

[2] As the Court noted above, defendant was originally sentenced to 32 years, but the sentence was later reduced to 27 years [Docs. 22, 33].

[3] The United States points out that the government would not necessarily have agreed to the same plea agreement terms in a hypothetical plea agreement which was subject to the "stacking" changes [Doc. 47 at p. 7], and thus any arguments as to what sentence defendant would have received if sentenced now are purely speculative.

5

after the fact, even though Congress specifically chose not to make the "stacking" changes retroactive. *See United States v. Henry*, 983 F.3d 214, 228 n.8 (6th Cir. 2020) ("We have not, however, considered yet whether any disparity between pre-First Step Act stacked sentences for § 924(c) convictions and post-First Step Act sentences for § 924(c) convictions is an extraordinary circumstance for compassionate release purposes."). However, the Sixth Circuit recently affirmed a decision by another court in this District which rejected a defendant's arguments that, inter alia, "stacking" satisfied the extraordinary and compelling requirement. *See United States v. Robinson*, No. 20-5929, 2021 U.S. App. LEXIS 322, 2021 WL 71545, at *2 (6th Cir. Jan. 6, 2021) (holding that the district court did not abuse its discretion in denying release based on consecutive § 924(c) counts on the ground that such long sentences were "commonplace" and not the kind of extraordinary and compelling reasons that warranted a reduction).

The Court also notes that the Sixth Circuit recently addressed the issue of whether the First Step Act change in certain mandatory minimum penalties for drug offenses under 21 U.S.C. §841, *see* First Step Act of 2018, Pub. L. No. 115-391, §401, 132 Stat. 5221, could constitute an extraordinary reason for compassionate release. *United States v. Tomes*, 990 F.3d 500, *9-11 (6th Cir. 2021). The Sixth Circuit noted that the First Step Act explicitly provides: "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act, §401(c). Noting that Tomes's sentence was imposed before the enactment of the First

6

Step Act, the Sixth Circuit rejected Tome's argument that the amendment could constitute an extraordinary reason for a sentence reduction in his case, stating "[w]e will not render §401(c) useless by using §3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Id.* at *11.

The Court recognizes that the question of whether § 924(c) stacking qualifies as an extraordinary and compelling reason for the purposes of compassionate release is unsettled, with courts across the country reaching different conclusions. Defendant cites numerous cases (though none controlling) in his favor [*See* Docs. 45, 48, 49-53]. In this instance, the Court agrees with (and follows) *Robinson* and *Tomes*, and finds that the non-retroactive nature of the change to § 924(c) "stacking" does not qualify as extraordinary and compelling.

As the Court cited above, numerous defendants were sentenced for § 924(c) convictions before the implementation of the First Step Act. *Robinson*, 2021 U.S. App. LEXIS 322, 2021 WL 71545, at *2. Defendant is hardly unique in that regard, and the Court does not find such a common occurrence to rise to the level needed to support compassionate release. In reaching this decision, the Court recognizes that, under *Jones*, the Court may exercise its own discretion in making the extraordinary and compelling determination. *United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020). The Court, exercising that discretion, rejects defendant's arguments.

7

Accordingly, for the reasons set forth above, the Court finds that the change in §924(c) "stacking" is not an extraordinary and compelling reason for compassionate release.

C.     § 3553(a) factors

In light of the Court's finding above, the Court need not address the § 3553(a) factors, but, in this instance, the Court elects to do so. "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

The Court begins with the criminal conduct at issue in this case. The Presentence Investigation Report ("PSR") describes defendant's conduct as follows:

> On February 21, 2009, the defendant robbed a pizza delivery person who was working for Papas John's, located at 402 North Cedar Bluff Road, Knoxville, Tennessee, when he went to deliver a pizza to 601 South Peters Road, Knoxville, Tennessee. As the delivery person was getting out of his car, the

8

defendant approached him and pointed a Taurus 9-millimeter pistol at him, demanding all of his possessions. The defendant took $150 in cash, the pizza, and the warming bag from the delivery person. The Papa John's restaurant was then engaged in commercial activities in interstate commerce and an industry which affected interstate commerce, including the purchase and sale of food and beverages and other goods and services obtained outside the State of Tennessee.

On February 25, 2009, the defendant robbed a pizza delivery person who was working for Pizza Hut, located at 9268 Kingston Pike, Knoxville, Tennessee, when he went to deliver a pizza to Plantation Manor Apartments, 438 Manor View Way, Knoxville, Tennessee. As the delivery person was getting out of his car, the defendant approached him, pointed a loaded Taurus 9-millimeter pistol at him, and then "racked" the gun. The robber said "I want your money and I want the food or I'll shoot you." The defendant took $40 in cash of the delivery person's personal money, as well as the pizza and warming bag. The Pizza Hut restaurant was then engaged in commercial activities in interstate commerce and an industry which affected interstate commerce, including the purchase and sale of food and beverages and other goods and services obtained from outside the State of Tennessee.

On March 3, 2009, the defendant robbed a pizza delivery person who was working for Domino's, located at 11408 Kingston Pike, Knoxville, Tennessee, when he went to deliver a pizza to 9500 Hidden Oak Way, Knoxville, Tennessee. As the delivery person was getting out of his car, the defendant approached him, pointed a loaded Taurus 9-millimeter pistol at him, and then "racked" the gun. The defendant took $17 in cash of the delivery person's personal money, as well as the pizza, hot wings, and the warming bag. The Domino's restaurant was then engaged in commercial activities in interstate commerce and an industry which affected interstate commerce, including the purchase and sale of food and beverages and other goods and services obtained from outside the State of Tennessee.

On March 6, 2009, the defendant robbed a pizza delivery person who was working for Pizza Hut, located at 9268 Kingston Pike, Knoxville, Tennessee, when he went to deliver a pizza to 215 Langley Place, Knoxville, Tennessee. As the delivery person was getting out of his car, the defendant approached him, pointed a loaded Taurus 9-millimeter pistol at him, and then "racked" the gun. The defendant told the delivery person to put the food and money on the ground and to walk into a nearby hotel. The defendant took $65 in cash of the delivery person's personal money, as well as the pizza. The Pizza Hut restaurant was then engaged in commercial activities in interstate

> commerce and an industry which affected interstate commerce, including the purchase and sale of food and beverages and other goods and services obtained from outside the State of Tennessee.
>
> The Taurus 9-millimeter pistol used by the defendant during the commission of these crimes of violence is a "firearm" as defined in Title 18, United States Code, Section 921 (a)(3) and was not manufactured in Tennessee. This Taurus 9-millimeter pistol was reported stolen on August 23, 2008.

[PSR at ¶¶ 27-31]. Defendant's past criminal convictions (a mix of misdemeanors and felonies) include multiple drug crimes and driving under the influence [*Id.* at ¶¶ 41-44].

This was a very serious crime. Defendant emphasizes the fact that no one was shot or otherwise physically injured during the various robberies. While the Court is mindful that no one was physically harmed, that in no way diminishes the seriousness of the offense. Defendant robbed four different pizza delivery drivers at gun point. And while defendant did not shoot anyone, the Court is equally mindful of the traumatic effect being robbed at gun point likely had on defendant's victims.

Defendant argues that the instant crimes arose from his history of drug abuse, and points to his efforts to educate and rehabilitate himself, including completion of a drug education program in January of 2013 [Doc. 45 at p. 20-21]. In response, the government notes that in 2016 defendant declined to participate in the Bureau of Prison's 500-hour drug treatment program, and instead only completed a basic drug education course [Docs. 47 at p. 9 and 47-4]. In its judgment, the Court recommended that defendant participate in the 500-hour program [Doc. 22 at p. 2 and Doc. 33 at p. 2]. Defendant concedes that he has not completed the 500-hour drug abuse treatment program, but argues that he would

10

Case 3:09-cr-00131-TAV-DCP Document 55 Filed 04/19/21 Page 10 of 12 PageID #: 300

complete the program and the Court could premise a sentence reduction upon completion of the 500-hour program [Doc. 45. at p. 22].

The Court finds the fact that defendant claims that his past drug history led to the instant crimes, and then declined to take advantage of the Bureau of Prison's extensive drug abuse treatment program to be of particular note, and calls defendant's commitment to the 500-hour program into question. Prior to seeking compassionate release, defendant indicated he had no interest in the program, but now that he seeks compassionate release, he is ready to participate in the program. This fact raises concerns about defendant's sincerity, and to the risk of defendant relapsing into illegal drug use once released.

Considering all of the above, as well as all the other evidence of record, the Court finds that the sentencing factors weight against compassionate release. Among other things, the Court finds that the serious nature of the offense, the need to promote respect for the law and provide just punishment, the need for adequate deterrence both as to this defendant and to the public at large, and to protect the public from further crimes by this defendant all weigh against compassionate release. The violent nature of defendant's crime, armed robbery, also weighs heavily against compassionate release.

As the Court noted above, defendant was sentenced to a term of imprisonment of 324 months [Doc. 33], and, taking into account good credit time, he is due to be released April 4, 2032, approximately 132 months from now. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020)

11

("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Given the significant amount of time left on defendant's sentence, the Court finds that granting compassionate release would not reflect the need to provide just punishment or the seriousness of the offense.

In reaching this decision, the Court has considered the parties' filings, including supplements filed by defendant, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole. While the Court is sympathetic to defendant's efforts to rehabilitate himself, that is only part of the compassionate release calculus. On the record before the Court, the sentencing factors weigh against early release, and defendant's motion for compassionate release [Doc. 44] will be **DENIED**.

## IV. Conclusion

Accordingly, for the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 44] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE